# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN, MADISON DIVISION

| | |
|---|---|
| JARED BURRESS and MEGAN BURRESS, ) <br> on their own behalf, and on behalf of their ) <br> minor children, M.B. and L.B., ) <br>   ) <br> **Plaintiffs,** ) <br>   ) <br> v. ) <br>   ) <br> MR. G & G TRUCKING, LLC, ) <br> GUIDO F. RIVADENEIRA; and ) <br> LIOSBANY RAFAEL ALCOLEA AGUILERA, ) <br>   ) <br>   ) <br> **Defendants.** ) | No. 3:19-CV-00791 <br><br> **JURY DEMAND** |

## PLAINTIFFS' MOTIONS IN LIMINE

The Plaintiffs, Jared and Megan Burress, by and through undersigned Counsel, file this Omnibus Motion in Limine ("Motion") to present the following evidentiary issues to the Court for pre-trial rulings.

### CASE BACKGROUND

This is a clear-liability personal injury case arising from the Defendants' *per se* unlawful, negligent and reckless operation of a tractor-trailer on a stretch of I-39. Dkt. 67, ¶ 7.

Defendant Mr. G&G Trucking, LLC ("MGGT") is a trucking company. In 2018, MGGT hired Defendant Liosbany Aguilera ("Aguilera") to drive a truck for them. Prior to being hired by MGGT, Aguilera had no professional experience driving a truck. MGGT's hiring of Aguilera was extremely informal and did not comply with the regulations implementing the Federal Motor Carrier Safety Act. As such, Aguilera was not meet the requirements of 49 C.F.R. § 391.11(b) to be considered "qualified" to drive a truck.

On June 21, 2018, the Defendant Aguilera was driving MGGT's tractor-trailer. He approached a line of parked cars and rear-ended them.

The Plaintiffs – a family of four with two minor children – were in the line of cars that were struck by the Defendants' truck:



As a result of the Defendants' conduct, the Plaintiffs suffered serious personal injuries.

This Court has already entered default judgment against the driver, Defendant Aguilera, and has denied Defendants' motion to reconsider that order. *See* Dkt. 66. The remaining issues for trial are (1) whether Defendants MGGT and Rivadeneira are vicariously liable for Aguilera's conduct; (2) whether Defendants MGGT and Rivadeneira are directly liable for Plaintiffs' injuries; (3) the amount of Plaintiffs' compensatory damages; (4) whether punitive damages should be awarded against MGGT; and if so, (5) the amount of punitive damages.

## SPECIFIC MOTIONS IN LIMINE

### 1. This Court Should Prevent the Defendant from Presenting any Argument or Evidence in Support of a Comparative Fault Defense Against the Plaintiffs or Any Third Party.

This Court should prevent the Defendant from presenting any argument or evidence in support of a comparative fault defense against the Plaintiff or against any non-party (which was not plead) because the Defendants have not specifically pled any factual basis for a comparative fault defense and have acknowledged in discovery that no such factual basis exists.

Affirmative defenses must be pled with specificity to give the plaintiff sufficient notice of the factual basis of the defense. *Eagle Cove Camp & Conf. Ctr. v. Town of Woodboro,* 2011 U.S. Dist. LEXIS 162624, *19 (W.D. Wisc. Mar. 24, 2011); *Fogel v. Linnemann (In re Mission Bay Ski & Bike, Inc.)*, 2009 Bankr. LEXIS 2495, *16 (N.D. Ill. Bankr. Sept. 9, 2009). Failure to plead an affirmative defense results in its waiver because a defendant "should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." *Venters v. City of Delphi*, 123 F.3d 956, 967-968 (7th Cir. 1997).

Here, the Defendants' Answer to the Amended Complaint states – in entirely barebones fashion – "[u]pon information and belief, the Plaintiffs' damages, if any, were caused by the actions or inactions of others whom these Answering Defendants are not responsible" without identifying whom and "[u]pon information and belief, the Plaintiffs' damages, if any, were caused by the actions

3

or inactions of the Plaintiffs." Dkt. 67, p. 12, ¶¶ 5-6.

It is difficult to imagine how the Plaintiffs could be responsible for their injuries, as they were parked in traffic on the highway and slammed from behind. Plaintiffs deposed all three Defendants and each of those Defendants acknowledged that they were not aware of any basis to blame the Plaintiffs, or any other third party, for accident at issue in this case. Deposition of Liosbany Aguilera, at pp. 31:2-5, 64:18-65:6 (attached as Exhibit 1) ("Aguilera Depo"); Deposition of Corporate Rep. of Mr. G&G, at pp. 55:14-20, 69:24-70:6 (attached as Exhibit 2) ("MGGT Depo"); Deposition of Guido Rivadeneira, at pp. 58:11-60:3, 61:1-11 (attached as Exhibit 3) ("Rivadeneira Depo").

Since Defendants have not alleged any factual basis for blaming the Plaintiffs or any third party for the accident, and have not been able to identify any factual basis for a comparative fault defense against Plaintiffs or any third party in discovery, they should not be permitted to ambush the Plaintiffs by arguing comparative fault or present evidence of comparative fault at trial.

### 2. This Court Should Exclude Testimony or Reference to a Hearsay Comment from an Unidentified Mechanic that the Weather was to Blame for the Accident.

This Court should exclude testimony or reference to a hearsay comment from an unidentified mechanic, pursuant to Fed. R. Evid. 602 and 803.

During his deposition, Defendant Rivadeneira testified that a mechanic (who was not at the scene of the accident and could not be identified) made a comment that the accident "must have been due to the weather." Rivadeneira Depo, Ex. 3, at p. 60:19-24. This comment should be excluded as inadmissible hearsay and speculation per Fed. R. Evid. 602 and 802.

### 3. This Court Should Exclude Any Argument, Testimony, Comment, Suggestion, Reference to Any Claim the Plaintiffs Made to their Own Insurance or to Any Other Collateral Source, or to the Fact that Plaintiffs Had Insurance.

This Court should exclude any reference to Plaintiffs' insurance, claim(s) to their own insurance, or any other collateral source pursuant to the collateral source rule.

Under Wisconsin's collateral source rule, "the amount of damages awarded to a person injured because of another individual's tortious conduct is not reduced when the injured party receives compensation from another source, such as insurance. . . ." *Ellsworth v. Schelbrock*, 235 Wis. 2d 678, 681 (Wisc. 2000). The Seventh Circuit also recognizes the collateral source rule as a matter of federal evidentiary procedure. *See Lawson v. Trowbridge*, 153 F.3d 368, 380 (7th Cir. 1998) (recognizing the "general rule against admitting" evidence of a collateral source).

As a matter of both Wisconsin substantive law and federal procedural law, the Defendants should be barred from presenting any evidence of a collateral source.

### 4. This Court Should Permit Plaintiffs to Present Proof that Defendants had Liability Insurance at the Time it Employed Defendant Aguilera.

This Court should permit Plaintiffs to elicit testimony that Defendant MGGT had liability insurance at the time it employed, and admit MGGT's insurance policy into evidence, because Defendant MGGT has affirmatively introduced the fact that Defendant Aguilera was insured under its liability policy as part of its substantive defense to Plaintiffs' core allegations.

The Plaintiffs have alleged that MGGT had a duty to use reasonable care in selecting a driver for their tractor-trailer truck and breached that duty in allowing Defendant Aguilera to drive their truck. Dkt. 62 at ¶¶ 87-93. When MGGT's corporate representative was questioned about its process in determining that Defendant Aguilera was qualified to drive its tractor-trailer, MGGT testified that it *relied* on its liability insurance company in that process:

| | |
|---|---|
| Mr. Hammervold: | So you needed a driver, and Mr. Aguilera was your only option? |
| Mr. Guillen: | Well, yes. And **I sent the information to the insurance company, and the insurance company said he was fine. He was okay.** |
| Mr. Hammervold: | Did you rely on your insurance company at all in determining that Mr. Aguilera was a suitable driver for you? |
| | . . . |
| Mr. Guillen: | **I -- I trusted that if the company -- the insurance company was telling me that he was okay, then it was okay for him to drive.**[1] |

---

[1] MGGT Depo at 26:5-27:2 (omitting form objection from Defense counsel and non-substantive interpreter comment).

5

Under Fed. R. Evid. 411, the existence of liability insurance is not admissible to prove whether a person acted negligently. However, the court "may admit this evidence for another purpose." *Id.*

Here, the Plaintiffs must be permitted to reference the fact that MGGT liability insurance policy during the relevant time because MGGT's affirmative reliance on its insurance liability company's willingness to insure the driver to determine Defendant Aguilera was suitable to drive its truck (1) had opened the door to the issue and (2) is part of the Plaintiffs' essential proof that MGGT failed to adequately vet Defendant Aguilera in the manner required by federal law. The fact that MGGT had liability insurance that covered Defendant Aguilera, and relied on the fact of that coverage to authorize Aguilera to drive, is material to a disputed factual issue that is central to this case, and therefore is admissible, notwithstanding Fed. R. Evid. 401. The fact that MGGT's corporate representative testified its liability insurance carrier approved Defendant Aguilera to drive MGGT's truck may also be properly used for impeachment because MGGT's liability insurance carrier has taken the inconsistent position that it did *not* approve Defendant Aguilera to drive for MGGT. *See* Dkt. 58-1, p. 6, ¶ 27 ("Prime never provided underwriting approval for the addition of Aguilera . . . as an insured under the Policy.").

**5. If Defendants Present Evidence or Testimony Regarding their Poverty or Lack of Assets, including *e.g.,* Mr. Guillen's Brief Homelessness, this Court Should Permit Plaintiffs to Introduce Proof of Defendants' $1,000,000 Insurance Policy Limit.**

The relative wealth or poverty of a party is generally inadmissible, but the Defendants may choose to present evidence about their financial condition as a defense to the availability or the amount of punitive damages. The Plaintiffs request a ruling in limine that if the Defendants present any evidence of their limited assets or financial position, Plaintiffs shall be entitled to present evidence that Defendants will be indemnified up to a $1,000,000 insurance policy limit by their liability carrier, Prime Insurance.

If the Defendants "plead poverty as to punitive damages, they open the door for Plaintiff to offer evidence of indemnification as to compensatory damages" because they "cannot argue poverty and avoid telling the jury that they are partially indemnified." *Gonzalez v. Olson*, 2015 U.S. Dist. LEXIS 76203, *24 (N.D. Ill. Jun. 12, 2015); *see Kemezy v. Peters,* 79 F.3d 33, 37 (7th Cir. 1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab."); *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (Rationale for excluding evidence of indemnification "dissolved" once defendants presented evidence of their "financial weakness"); *Kies v. City of Aurora,* 156 F. Supp.2d 970, 978 n. 4 (N.D. Ill. 2001) ("If defendants do offer evidence or argument that Smith is unable to personally satisfy a judgment against him, Kies will be allowed to introduce rebuttal evidence of liability insurance.").

Here, the Defendants are expected to present proof of their lack of assets and/or poverty. MGGT's owner, Mr. Guillen, testified that that after the accident at issue, MGGT sold the damaged truck for only $3,000, and thereafter sold its only other remaining truck for $5,000 after it was involved in a another collision. MGGT Depo, Ex. 1, at p. 11:14-12:10. Mr. Guillen also testified that MGGT had to stop operating as a company and does not have any remaining assets. *Id.* Mr. Guillen also testified that he was homeless at one point because he had separated from his wife and had to live in his truck. MGGT Depo at 44:15-45:8. This fact is likely to come up at trial because Mr. Guillen has tried to use his temporary homelessness as an excuse for disposing of Defendant Aguilera's driver qualification file. *See id.*

While the Defendants are expected to suggest to the jury that they will not be able to pay a significant judgment if one is entered against them, the Defendants had a liability insurance policy with Prime Insurance with a $1,000,000 policy limit. If the Defendants present evidence to the jury that might cause the jury to be influenced by the Defendants' apparent inability to pay on a judgment,

7

the jury should hear the truth: that most, if not all all,[2] of the judgment will be satisfied by the Defendants' liability insurance policy. *See Gonzalez*, 2015 U.S. Dist. LEXIS 76203, *24 *Kemezy,* 79 F.3d at 37 (7th Cir. 1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab."); *Lawson*, 153 F.3d at 379; *Kies,* 156 F. Supp.2d at 978 n. 4.

6. **This Court Should take Judicial Notice of Wis. Stat. § 346.14(a) and the Regulations Implementing the Federal Motor Carrier Safety Act.**

This Court should take judicial notice of Wis. Stat. § 346.14(a) and the regulations implementing the Federal Motor Carrier Safety Act.

Generally, Courts must take judicial notice of statutes and regulations. *O'Neill v. United States DOJ*, 2008 U.S. Dist. LEXIS 23593, *4 (W.D. Wisc. Mar. 25, 2008). "In addition, pursuant to 44 U.S.C. § 1507, the Code of Federal Regulations is required to be judicially noticed." *Id.* (granting request for judicial notice where sections of the CFR were germane to plaintiff's claims).

Here, Plaintiffs' claims are supported by Defendants' violation of Wis. Stat. § 346.14(a) and various federal regulations implementing the Federal Motor Carrier Safety Act. *See e.g.,* Dkt. 62 at ¶ 15-25, 70, 88-91. Since that statute and those regulations are the proper subject of judicial notice and are germaine to Plaintiffs' claims, this Court should take judicial notice of that statute and those regulations.

7. **This Court Should Designate as Established Fact and Prevent MGGT from Challenging that MGGT Did Not Obtain or Maintain the Documents Required for Defendant Aguilera to be "Qualified" to Drive a Commercial Vehicle under Federal Law.**

Pursuant to Fed. R. Civ. P. 26(g) and 37(c)(1), this Court should designate as an established fact – and prevent MGGT from challenging – that MGGT did not obtain or maintain the documents required for Defendant Aguilera to be considered a "qualified driver" of a commercial vehicle under

---

[2] Indeed, the Plaintiffs have presented multiple settlement offers to Defendants' insurance carrier for amounts well within Defendants' insurance policy limit.

8

federal law because MGGT's responses to written discovery indicated that no such documents existed and if such documents ever existed, MGGT improperly spoliated them.

Pursuant to Fed. R. Civ. P. 26(g)(1)(A), the signing of a discovery response indicates that it is complete and correct as of the time it is made. Pursuant to Rule 26(g)(3), courts must impose an appropriate sanction on the signer and/or the party, if the discovery response is not complete or is not correct. Rule 37 authorizes courts to impose appropriate evidentiary sanctions when a party fails to comply with a court order to provide discovery, or spoliates evidence, including by designating certain facts as established when appropriate.

When a party reasonably foresees litigation is on the horizon, it must preserve relevant material. *Weitzman v. Maywood*, 2014 U.S. Dist. LEXIS 120686, *5 (N.D. Ill. Aug. 29, 2014). In analyzing whether to sanction a party for spoliation, "a court looks to three factors: (1) the existence of a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and (3) the prejudice that results from the breach." *Id.* "Sanctions can be imposed on a finding of bad faith, willfulness, or fault, and are proper only when a party knew or had reason to know that litigation was on the horizon." *Id.*

Here, MGGT's responses to Plaintiffs' written discovery requests, and other circumstantial evidence, indicate that MGGT never obtained and maintained the documentation necessary for Defendant Aguilera to be considered a "qualified driver" under federal law. However, the deposition of MGGT's corporate representative has foreshadowed the MGGT plans to shift from the position of its signed written discovery responses, and to claim at trial that although it does not have the documents to necessary to show that Defendant Aguilera was a "qualified driver," it "used to" have those documents, but destroyed them.

Pursuant to Rule 26(g) and 37, this Court should prevent MGGT from taking this position at trial because it contradicts MGGT's signed written discovery responses, and it is either false or would

allow MGGT to benefit from its bad faith spoliation of documents it knew or should have known would be relevant to the Plaintiffs' claims. Simply, MGGT should not be permitted to testify about the existence of and unilaterally characterize the content of documents that either never existed or that MGGT destroyed in bad faith.

### a. Carriers Like MGGT Must Obtain and Keep Certain Documents for a Driver to be "Qualified" to Drive a Commercial Vehicle Under Federal Law.

In order for a driver to be "qualified" to operate a commercial vehicle, he or she must provide specific documentation to a motor carrier, including (1) a written application for employment containing the information required in § 391.21(b)(1)-(10); (2) a certificate of accident history required by 49 C.F.R. § 391.27; and (3) a certificate of driver's road test in accordance with 49 C.F.R. § 391.31. *See* 49 C.F.R. § 391.11(b); 391.21.

Upon receiving this information and documentation from the driver, a motor carrier must then undertake its own background investigation, including by obtaining the driver's motor vehicle records for each state where the driver held a license in the past three years. 49 C.F.R. § 391.23. The motor carrier must then retain those records, or if no records can be maintained, the motor carrier must document its good faith efforts to obtain those records and certify that no records exist for the driver. *Id.*

The motor carrier must then maintain that employment application, certifications from the driver, and motor vehicle records it obtained for the driver as part of the driver's "qualification file." 49 C.F.R. § 391.51. A motor carrier must retain a driver's qualification file "for as long as a driver is employed by that motor carrier and for three years thereafter." 49 C.F.R. § 391.51(c).

The documentation in the driver's qualification file is more than *evidence* of a driver's qualification to drive – the motor carrier must have those documents for the driver to be qualified to drive. *See* 49 C.F.R. § 391.11(b).

### b. MGGT Previously Certified Pursuant to Rule 26(g) that it Did Not Have Any Such Documents for Defendant Aguilera.

On December 17, 2019, Plaintiffs issued interrogatories and requests for production to Defendant MGGT. *See* Dkt. 22-2 at pp. 1-30. Plaintiffs' interrogatory #10 asked MGGT to identify everything it did to attempt to determine whether it was safe or legal for Defendant Aguilera to drive. *Id.* at p. 7. Plaintiffs' requests for production #7 and #10 asked for Defendant Aguilera's complete driver qualification file and for all documents of any kind related to MGGT's pre-employment background investigation into Defendant Aguilera. *Id.* at p. 18. Plaintiffs' requests for production included a specific instruction regarding documents that were no longer kept *Id.* at p. 13. MGGT was required to identify and explain the disposition of any responsive documents no longer in its possession that it had destroyed or discarded. *Id.*

MGGT initially failed to provide any objection or response to Plaintiffs' written discovery requests, but on February 27, 2020, this Court ordered Defendant MGGT to "provide *full responses* to all of plaintiff's outstanding discovery requests *with no objections* other than legitimate claims of privilege." Dkt. 26 (emphasis added).

On March 27, 2020, MGGT responded to Plaintiffs' written discovery requests, without any objections. MGGT acknowledged that it did not have a driver qualification file, or any of the required components, for Defendant Aguilera, and that it did not have any documents reflecting any pre-employment background investigation into Defendant Aguilera. MGGT's Resp. to Plaintiffs' Requests for Production, pp. 3-4 (attached as Exhibit 4 hereto). MGGT did not indicate that it ever had such documents as would have been required by Plaintiffs' instructions (to which MGGT did not object). *See id.* MGGT's interrogatory responses indicated that the only thing MGGT did to determine whether it was safe or legal for Mr. Aguilera to drive was to check that he had a valid CDL license and provide approximately two weeks of on-the-job training. MGGT's Response to Plaintiffs' Interrogatories, p. 4 (attached as Exhibit 5 hereto). MGGT made no mention of requiring Aguilera to

11

provide any of the other information or documents required 49 C.F.R. § 391.11(b) and 49 C.F.R. § 391.51.

### c. Circumstantial Evidence Supports that MGGT Never Obtained or Maintained the Documents Required for Defendant Aguilera to be a "Qualified" Driver of a Commercial Vehicle.

MGGT is the only company that ever allowed Defendant Aguilera to drive a tractor-trailer. Prior to his being hired as a driver by MGGT, Defendant Aguilera had no professional experience as a truck driver and had never worked for another motor carrier. Aguilera Depo, Ex. 2, p. 21:21-23; MGGT Depo, Ex. 1, p. 32:5-8. Before and after driving for MGGT, Defendant Aguilera worked as a "carpenter, installer" for a company called The Closet Factory – not as a truck driver. Aguilera, p. 20:6-21:7, 38:8-39:23, 40:12-41:9.

Defendant Aguilera testified that he did ***not*** have to provide a written employment application to MGGT before he was hired. Aguilera Depo, Ex. 2, at p. 21:21:24-23:4. Instead, Defendant Aguilera only had to show his commercial drivers license and a "health card." *Id.* Mr. Guillen, the owner of MGGT, has never personally reviewed the federal regulations applicable to motor carriers and to this date does not know what MGGT was required to obtain from Defendant Aguilera for him to be a "qualified" driver. *Id.* at p. 16:3-12; *compare Id.* at 43:5-44:10 *with* 49 C.F.R. §§ 391.11(b), 391.51. As corporate representative of MGGT, Mr. Guillen testified that he required Aguilera to provide a copy of his driver's license and a copy of his social security card and to fill out some type of an application, but he did not mention requiring Aguilera to provide a certificate of accident history or a certificate of driver's road test. *Id.* at p. 41:9-16.

### d. MGGT's Alleged Spoliation of Defendant Aguilera's Qualification File.

Mr. Guillen claimed that MGGT "used to have" a driver qualification file for Mr. Aguilera, but he threw it out sometime in 2019. MGGT Depo, Ex. 1, at p. 44:12-45:8. At the time Mr. Guillen threw out the driver qualification file that MGGT supposedly maintained for Defendant Aguilera,

MGGT had already notified its insurance company of potential claims arising from the accident at issue in this case, *compare id.* at pp. 65:16-66:16 and 48:3-10 *with id.* at pp. 44:24-45:8, and Plaintiffs' Counsel had already sent a notice of Plaintiffs claims to MGGT (*see* Exhibit 6 hereto).

Mr. Guillen claims that he threw out Defendant Aguilera's driver qualification file because he had been storing that file at his house, but he could no longer store it there when he temporarily separated from his wife, Jessica Guillen, because she would not allow him to continue living there. *Id.* at 44:12-45:8. However, this excuse makes no sense, and does not absolve MGGT, because Mr. Guillen's wife, Jessica Guillen, was also a legal member of MGGT, so she also had a duty to preserve Defendant Aguilera's qualification file, and she continued to reside at the house where Aguilera's driver qualification file had supposedly been stored. *Id.* at 64:17-65:15.

### e. The Requested Relief is an Appropriate Sanction.

The requested relief is an appropriate sanction because MGGT violated its Rule 26(g) obligation and/or spoliated evidence by intentionally and/or recklessly destroying documents it knew were relevant to anticipated litigation. The requested relief is tailored to prevent the Plaintiffs from being prejudiced by Defendants' conduct.

MGGT clearly had a duty to preserve Defendant Aguilera's driver qualification file because (1) MGGT was required to do so by 49 C.F.R. § 391.51(c) and (2) MGGT became aware of the Plaintiffs' claims, to which Defendant Aguilera's qualification file was relevant.

The degree of culpability required for an evidentiary sanction depends on the sanction, but since Plaintiffs are only seeking a narrowly tailored sanction establishing certain related facts, recklessness or gross negligence are sufficient. *Weitzman*, 2014 U.S. Dist. LEXIS 120686, *5; *see Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc.,* 2011 U.S. Dist. LEXIS 17623, 2011 WL 722467, at *11 (N.D. Ill. Feb. 23, 2011) (finding that severe sanctions require only gross negligence or recklessness). Here, MGGT's destruction of Defendant Aguilera's driver qualification

file – if one ever existed – was at least "reckless" because MGGT was aware of the Plaintiffs' claim and MGGT's excuse for doing so makes no sense. MGGT Depo, Ex. 1, at p. 44:12-45:8, 48:3-10, 64:17-65:15, 65:16-66:16; Ex. 6.

The relief requested by Plaintiffs is narrowly tailored to prevent the Plaintiffs from being prejudiced. The Defendants did not produce the documents they were required to keep that are necessary to show that Defendant Aguilera was "qualified" to drive at the time of the accident because they stated that no such documents existed. However, it is expected that the Defendants will attempt to testify about the existence and content of documents that either never existed (as they previously certified), or that Defendants spoliated, *after* knowing litigation was on the horizon. In either case, MGGT should not be able to testify about the content of documents they certified did not exist or that MGGT spoliated knowing that this litigation was forthcoming.

**RESPECTFULLY SUBMITTED,**

**s/Mark Hammervold**
Mark Hammervold, IL #6320744[3]
Hammervold Law LLC
155 S. Lawndale Ave.
Elmhurst, IL 60126
(T) 405.509.0372
(F) 615.928.2264
mark@hammervoldlaw.com

Steven J. Morton, IL #14824[4]
Steven J. Morton & Associates, Ltd.
212 W. Washington St., Suite 1008
Chicago, IL 60606
(T) 312.372.4448
sjm@sjmlaw.com

*Attorneys for the Plaintiffs*

---

[3] Admitted Pro Hac Vice.
[4] Admitted Pro Hac Vice.

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 18, 2020, a true and correct copy of the foregoing was served upon all counsel of record via the ECF electronic filing system.

**s/Mark Hammervold**