IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JARED BURRESS and MEGAN BURRESS,
on their own behalf, and on behalf of their
minor children, M.B. and L.B.,

                               Plaintiffs,
   v.

MR. G & G TRUCKING, LLC,
GUDIO F. RIVADENEIRA, and
LIOSBANY RAFAEL ALCOLEA AGUILERA,

                               Defendants.

OPINION and ORDER

19-cv-791-jdp

---

This case is scheduled for a final pretrial conference on November 10, 2021. This opinion will address the parties' motions in limine, ruling on most of them and identifying issues that require further discussion at the conference.

Both parties move to prohibit the other from presenting any evidence to support certain claims and defenses. Motions in limine are designed to resolve issues of admissibility; they're not appropriate vehicles to get a ruling on the merits of a claim or defense. *See Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 145956, at *3 (W.D. Wis. Oct. 8, 2014) (denying motion in limine because it was "a thinly-veiled motion for summary judgment"). Many of these disputes should have been litigated in motions for summary judgment if the parties wanted them resolved before trial.

That being said, the court will not allow the parties go to trial on claims for which they have not properly disclosed their evidentiary support. Allowing unsubstantiated claims to go forward would confuse the issues at trial and waste the jury's time. If a party was obligated to disclose evidence to support a claim or defense in its initial disclosures or in response to an

interrogatory or request for production, the party will be limited to the evidence they produced in their responses and supplements. *See* Fed. R. Civ. P. 37(c). The court will identify these problematic claims in the rulings that follow. The parties should come to the final pretrial conference prepared to show what evidence they will use to support these claims and how it was properly disclosed. If there is no properly disclosed admissible evidence on a given issue, it will not go to trial.

**A. Plaintiffs' motions in limine (Dkt. 99)**

### 1. Motion to prevent defendants from presenting any evidence in support of a comparative fault defense against the plaintiffs or any third party

Plaintiffs ask the court to prevent defendants from presenting evidence to support a comparative fault defense because defendants did not properly plead the defense in their answer. Generally, the same pleading standards that apply to initial claims apply to affirmative defenses. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.3d 1286, 1294 (7th Cir. 1989). This means that defendants need to plead a factual basis for their affirmative defenses. *See, e.g., Barnes v. A T & T Pension Benefit Plan-Nonbargained Program*, No. C 08-04058 MHP, 718 F. Supp. 2d 1167, 2010 WL 2507769, at *2 (N.D. Cal. June 22, 2010) (collecting cases).

Here, defendants didn't plead a factual basis for their affirmative defenses; they just stated that plaintiff's injuries could have been caused by third parties. But the opportunity to move to dismiss or for a more definite statement has passed. And because defendants mentioned the affirmative defense of comparative fault in their answer, plaintiffs had some notice that defendants would pursue it.

However, the court is not convinced that defendants have an evidentiary basis to apportion responsibility to a non-party. Under Wisconsin law, negligence can be apportioned

2

to non-parties. *See Connar v. W. Shore Equip.*, Inc., 68 Wis. 2d 42, 44-45, 227 N.W.2d 660, 662 (1975); *Hauboldt v. Union Carbide Corp.*, 160 Wis. 2d 662, 681, 467 N.W.2d 508, 515 (1991). But the only evidence of third-party negligence that defendants identify is defendant Aguilera's deposition testimony that, right before the accident, "the vehicle ahead of [Aguilera] . . . moved to the right and then . . . the traffic stopped." Dkt. 99-1 at 29. That isn't evidence that the unidentified driver acted negligently. And even defendants' proposed special verdict form asks the jury to apportion responsibility between only Aguilera and Jared Burress. Dkt. 94 at 2. Defendants will have to proffer properly disclosed evidence to support a claim of comparative fault at the final pretrial conference.

### 2. Motion to exclude testimony or reference to a hearsay comment from an unidentified mechanic

During his deposition, defendant Rivadeneira testified that an unidentified mechanic made a comment that the accident "must have been due to the weather." Plaintiffs seek to exclude reference to this comment, and defendants don't object. The court will grant the motion as unopposed.

### 3. Motion to exclude evidence of plaintiffs' insurance

Plaintiffs ask to exclude any reference to plaintiffs' insurance or other collateral sources of recovery. Defendants argue that the motion is overbroad because evidence of insurance may be offered to lay foundation for other evidence, such as reports produced by the insurance company. But defendants don't point to any evidence they plan to introduce that would require referring to the Burress' insurance policy, so the court will grant this motion.

### 4. Motion to allow plaintiffs to present evidence of defendants' insurance

Plaintiffs contend that they should be allowed to present evidence of defendants' insurance. Plaintiffs acknowledge that evidence of insurance is inadmissible to prove negligence under Federal Rule of Evidence 411, but they plan to offer it for another purpose. Plaintiffs say that Victor Guillen testified—as a corporate representative for Mr. G & G Trucking (MGGT)—that he believed Aguilera was a suitable driver because "the insurance company said he was fine." Dkt. 128 at 7. Plaintiffs want to show that Guillen relied on a third party's determination of Aguilera's fitness to drive instead of doing his own due diligence.

Defendants argue that evidence of the insurance policy is inadmissible because plaintiffs don't plan to offer it for one of the reasons enumerated in Rule 411— to demonstrate "proof of agency, ownership, or control, or bias or prejudice of a witness." Fed. R. Evid. 411. But "[t]he situations listed in the rule are illustrative rather than exhaustive." 2 Weinstein's Federal Evidence § 411.04; *accord* David P. Leonard, *The New Wigmore: A Treatise on Evidence: Selected Rules of Limited Admissibility*, § 6.9 (rev. ed. 2010) ("The number of possible alternative uses of the existence or nonexistence of liability insurance evidence is, of course, unlimited."). So the court will grant plaintiffs' motion. Plaintiffs may introduce evidence that Guillen relied on the insurance company's determination of Aguilera's fitness to drive. But the court will instruct the jury they should not consider whether any party has insurance coverage for losses related to the accident.

### 5. Motion to allow plaintiffs to introduce evidence of defendants' insurance policy limit if defendants "plead poverty"

Plaintiffs ask that, if defendants present evidence of their finances, they be allowed to introduce evidence that defendants will be indemnified up to a $1,000,000 insurance policy

limit. Plaintiffs believe defendants may present evidence that MGGT dissolved following the accident and that the company's assets were sold at a loss.

Evidence of a defendant's ability to pay can be relevant to a punitive damages award. But if "the defendant is to be fully indemnified, such evidence . . . is inadmissible." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996). So the court will grant this motion only in part. Defendants may not present any evidence of their financial strength. Defendants may introduce information about the size of MGGT at the time of the accident, but defendants may not testify about the company's current assets or liabilities. If defendants adduce evidence of their current finances despite this ruling, plaintiffs will be allowed to introduce evidence of the insurance policy limit to rebut any inference that defendants cannot afford a large damages award.

Plaintiffs also believe that Guillen's brief period of homelessness may come up in discussions about the spoliation of Aguilera's driver qualification file. Guillen is not a defendant in this lawsuit. And MGGT was a limited liability company, so Guillen wouldn't be liable for a damages award against the company. Guillen's homelessness is at best marginally relevant, and it would be prejudicial. Defendants may not introduce any testimony or argument about Guillen's homelessness.

### 6. Motion to take judicial notice of statutes

Plaintiffs ask the court to take judicial notice of Wis Stat § 346.14(a) and "the regulations implementing the Federal Motor Carrier Safety Act." Dkt. 99 at 8. Plaintiffs are correct that courts may take judicial notice of statutes and regulations. But there are problems with this motion. First, there is no Wis. Stat. § 346.14(a). The court infers that plaintiffs meant to cite Wis. Stat. § 346.14(2)(a). Second, plaintiffs do not indicate which sections of the Code

5

of Federal Regulations they want the court to take notice of. At the pretrial conference plaintiffs will need to identify the exact statutes they want to be judicially noticed and to show how they are relevant.

### 7. Motion to establish as fact that MGGT did not have a proper qualification file for defendant Aguilera

Under federal law, a "qualified" driver of a commercial vehicle must provide specific documentation to the employer, including a written application for employment and a certificate of accident history. *See* 49 C.F.R. § 391.11(b); 391.21. The carrier must then maintain those documents in a "driver qualification file." *See* 49 C.F.R. § 391.51(c). In discovery, plaintiffs requested production of Aguilera's driver qualification file and any documents related to MGGT's pre-employment background investigation. Defendants said they did not have any documents related to Aguilera's driver qualification file or pre-employment background check. Dkt. 99-4 at 4. However, Guillen later testified that he once had a "qualification file" for Aguilera, but he disposed of it sometime in 2019, when he separated from his wife and moved out of his house. Dkt. 128 at 11. Plaintiffs now seek sanctions against defendants for providing an incomplete response to plaintiffs' discovery request and for destruction of evidence. They ask the court to establish as fact that Aguilera's file didn't contain the documents required by law.

Some discovery sanction is appropriate. The duty to preserve documents arises when a party knew, or should have known, that litigation was imminent. See *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Guillen disposed of Aguilera's file before this lawsuit was filed. But by then, Guillen was aware of the accident and had already notified MGGTs insurance company of potential claims arising from the accident. He should have

known that the accident would lead to litigation and that documents about Aguilera would be relevant to a lawsuit.

But plaintiffs' proposed remedy is too severe. Plaintiffs' requested sanction is more severe than an adverse inference instruction. But an adverse inference is warranted only if evidence is destroyed in bad faith—that is, for the purpose of keeping it from the opposing party. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644-45 (7th Cir. 2008). Plaintiffs haven't shown that Guillen acted in bad faith. But his failure to preserve Aguilera's driver file was at least unreasonable, which warrants a less severe sanction. *See Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000).

An appropriate sanction is to hold defendants to the deposition testimony about the contents of the file. Guillen testified that the file contained a copy of Aguilera's driver's license, a copy of his social security card, and some sort of application. Dkt. 128 at 41. He did not say, and defendants don't argue in their brief, that the file contained any of the other documents that may be required by law. The court will decide on the ultimate remedy after discussion with the parties at the final pretrial conference.

**B. Defendants' motions in limine (Dkt. 87)**

   **1. Motion to bar plaintiffs from offering testimony on negligent hiring or supervision claim**

Defendants seek to bar plaintiffs from offering evidence to support their negligent hiring and supervision claim because plaintiffs have not produced an expert to establish the standard of care.

"Requiring expert testimony before a claim can get to the jury is an extraordinary step that should be ordered only when unusually complex or esoteric issues are before the jury,"

7

*Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶26, 289 Wis. 2d 252, 269, 710 N.W.2d 680, 688 (internal citation omitted). If a negligence claim is reasonably comprehensible to the jury, expert testimony is not necessary. *Id*. Although plaintiffs' negligent hiring claim rests in part on alleged violations of federal laws regulating commercial drivers, the regulations themselves are not complicated. Lay jurors can competently determine whether, for example, Aguilera had a commercial driver's license, completed a written application for employment, or provided MGGT with a report of his accident history.

Defendants don't cite any cases where a court required an expert to testify on the standards of care for hiring truck drivers, and the cases they do cite aren't on point. In *Ledford v. Baenen*, No. 16-CV-665-JPS, 2019 WL 1412601, at *14 (E.D. Wis. Mar. 28, 2019), an expert was required to testify about building ventilation standards and the health impacts of carbon monoxide exposure, technical subjects well outside of a jury's expertise. *Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 514 (7th Cir. 2007), involving the standard of care for hotel security, is a little closer. But jurors are more familiar with what's expected of their fellow drivers than they are with what's expected in hotel security. And the court in *Shadday* noted that evidence of the standard of care can include relevant industry regulations. *Id*. at 514. The jury here will have regulations to guide them, and the issues in this case aren't unusually esoteric. The motion is denied.

### 2. Motion to bar plaintiffs' punitive damages claim

Defendants ask the court to prohibit plaintiffs from offering evidence related to their punitive damages claim. They argue that punitive damages are improper in this case because plaintiffs will not be able to provide clear and convincing evidence that defendants acted maliciously toward plaintiffs or intentionally disregarded plaintiffs' rights. This issue should

have been addressed in a motion for summary judgment. Plaintiffs have shown that, in other states, violations of federal trucking regulations can support a claim for punitive damages. *See Ferguson v. Garkusha*, No. 1:18-cv-03440, 2020 U.S. Dist. LEXIS 146632, at *7 (N.D. Ga. Aug. 14, 2020).

However, plaintiffs do not cite any case applying Wisconsin law where punitive damages were awarded for failure to follow federal trucking regulations, and they haven't pointed to other evidence that defendants intentionally disregarded their rights. At the pretrial conference, plaintiffs should be prepared to proffer their punitive damages evidence.

### 3. Motion to exclude evidence of Megan's psychological injury

Defendants ask the court to exclude any evidence of Megan Burress's anxiety because there will be no expert testimony to "corroborate" her psychological injury. The motion is denied. Megan's alleged injury doesn't present any complicated questions about causation. She can competently testify that following the accident, she experiences anxiety when she gets in a car. Megan is free to discuss psychological pain she's suffered up to this point. However, claims about future anxiety would require expert testimony. *See Ianni v. Grain Dealers Mut. Ins. Co.*, 42 Wis. 2d 354, 362, 166 N.W.2d 148, 152 (1969) ("As to future pain and suffering, the rule in this state is that a nonmedical witness is incompetent to express an opinion as to how long pain will be projected into the future . . .").

### 4. Motion to exclude evidence of Megan's loss of future wages

Defendants move to exclude testimony about Megan Burress's lost future wages. First, they argue that a claim of lost earning capacity must be supported by expert testimony. That's generally true under Wisconsin law. *See Brain v. Mann*, 129 Wis. 2d 447, 458, 385 N.W.2d 227 (Ct. App. 1986). But Megan isn't really claiming that her earning capacity was diminished.

9

Instead, she says that she lost out on a specific job opportunity because she was dealing with the family's injuries. Expert testimony wouldn't be required to prove that causal link.

But defendant's second argument has more traction. Defendants contend that the evidence of future loss is too speculative. At trial, Megan must "prove by credible evidence to a reasonable certainty that damages were suffered and . . . establish at least to a reasonable probability the amount of these damages." *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 387, 254 N.W.2d 463 (1977). Megan's deposition testimony is speculative: she says that her injuries prevented her from applying to a new job, but she didn't know how many other people applied or the likelihood that she would have received the job. And an expert probably would be required to calculate the value of the lost opportunity over Megan's lifetime.

Plaintiffs should be prepared to proffer evidence regarding Megan's damages at the final pretrial conference.

### 5. Motion to exclude evidence of Jared's lost wages

Jared didn't itemize his damages from lost wages in his initial discovery disclosures. Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires parties to disclose a "computation" of each category of damages. Plaintiffs say that Jared provided this information in his deposition, but the court doesn't see where Jared provided any computation of his damages. At the final pretrial conference, plaintiffs will have to show where they properly disclosed the computation of Jared's lost wages.

### 6. Motion to exclude evidence of Megan's knee pain

Defendants argue that Megan Burress should not be allowed to testify about her knee pain because it's not supported by expert testimony. But a lay witness is qualified to testify about pain they've experienced as a result of an accident, especially where there is a strong,

logically traceable connection between the accident and the injury. Claims about future pain would require an expert, *see Ianni*, 42 Wis. 2d at 362. But Megan can testify about the knee pain she's experienced so far.

### 7. Motion to exclude evidence of future medical treatment

Plaintiffs don't dispute that expert testimony is required to establish the need for future medical treatment. But the parties have disclosed two experts, Dr. Fideler and Dr. Watt, who plaintiffs say will testify about the need for future treatment. At the time of his deposition, Watt wasn't prepared to offer an opinion on the permanency of Jared's injuries. But Fideler wrote in his expert report that Jared sustained permanent injuries as a result of the accident, and that future surgery would be appropriate for his symptoms. Dkt. 117-1 at 5-6. Fideler's opinion supports a claim for future treatment, so the court will deny this motion.

### 8. Motion to exclude evidence of Aguilera's traffic citation

Defendant Aguilera received a traffic citation as a result of the underlying accident, and he entered a no contest plea. Defendants ask to exclude any evidence of that Aguilera received a citation. Federal Rule of Evidence 410(a) makes the no contest plea inadmissible. The citation itself is inadmissible hearsay. It's already been established for purposes of trial that Aguilera was negligent and that his negligence caused the accident, so the evidence is cumulative under Federal Rule of Evidence 403. The citation isn't relevant to the negligence of the other defendants. The court will grant this motion.

### 9. Motion to exclude evidence of defendants' other tickets

Plaintiffs oppose this motion only to the extent that it precludes them from introducing proof of Aguilera's driving record prior to the accident. Any citations that Aguilera may have received prior to the accident are relevant to the plaintiff's negligent hiring and supervision

claim. The driving record may be admitted to establish what MGGT knew or should have known about his driving record. Plaintiffs may not introduce evidence of tickets that any defendant received after the accident, but they may introduce evidence of any tickets or infractions Aguilera received before the accident.

10. **Motion to exclude evidence of Aguilera's firing**

Defendants say that firing Aguilera was a subsequent remedial measure and is thus inadmissible to prove negligence under Federal Rule of Evidence 407. Plaintiffs argue this position is inconsistent with Guillen's deposition testimony. That's not quite right, because Guillen is clear that Aguilera was fired because he got in an accident. Dkt. 128 at 14. Firing drivers who get in accidents makes future accidents less likely to occur, so Aguilera's firing was a remedial measure.

Plaintiffs also argue that evidence of remedial measures is admissible in a punitive damages case. But in the context of punitive damages, remedial measures are something that *defendants* would want to present as proof that deterrence is unnecessary. Plaintiffs haven't demonstrated that Aguilera's firing is admissible to prove anything other than defendants' negligence. The court will grant this motion.

11. **Motion to exclude the accident report**

Defendants move to exclude the Wisconsin Motor Vehicle Accident Report prepared by State Trooper Zoch. Wis. Stat. § 346.73 provides that such accident reports "shall not be used in any judicial trial, civil or criminal, arising out of an accident. . . ." The motion will be granted. Under Federal Rule of Evidence 501, state privilege rules apply in federal diversity actions applying state law. *See EEOC v. Ill. Dep't of Emp't Sec.*, 995 F.2d 106, 107 (7th Cir. 1993) ("State privileges are honored in federal litigation only when state law supplies the rule

of decision."). This is a diversity action applying Wisconsin negligence law, so the court will honor Wisconsin's accident report privilege.

Even without the statute, the report would be inadmissible as hearsay. Although the traffic report itself may be a business record under Federal Rule of Evidence 803(6), the report includes the statements of witnesses to the accident. Dkt. 12-2 at 1. These underlying witness statements are themselves inadmissible hearsay not subject any exception. *See* Fed. R. Evid. 805. Trooper Zoch would be free to testify at trial about his own observations of the crash site.

### 12. Motion to bar plaintiffs from referring to translator

The defendants in this case are native Spanish speakers, and they will rely on a Spanish translator during trial. Defendants ask to exclude "any references" to the translator as prejudicial under Federal Rule of Evidence 403. The motion will be granted with the understanding that some stray references to the translator will be unavoidable.

Plaintiffs may also ask questions about defendants' English proficiency to the extent that proficiency is relevant to the requirements to drive a commercial vehicle under federal law. Federal law requires that the drivers "can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records." 49 C.F.R. 391.11(b)(2). But a defendant's use of a translator in court is not evidence of whether they have the minimal English proficiency required of commercial drivers. The court will consider a jury instruction on the issue.

### 13. Motion to bar plaintiffs from using Golden Rule Arguments and "Reptile theory tactics"

This motion will be granted only in part. Plaintiffs agree not to make Golden Rule arguments that ask the jurors to decide the case on the outcome they would want for themselves if they were a party. The motion is otherwise denied. The "reptile theory" is ill-defined, and defendants don't point to specific evidence or arguments they want the court to exclude.

### 14. Motion to bar plaintiffs from calling any undisclosed witnesses

Defendants ask the court to bar plaintiffs from calling any "undisclosed witnesses." Because trial was initially scheduled for January 2021, the deadline to disclose expert witnesses passed in October 2020. *See* Fed. R. Civ. P. 26(a)(2)(D)(i). And the deadline to disclose all other witnesses passed in December 2020. *See* Fed. R. Civ. P. 26(a)(3)(B). So this motion will be granted and applied to both parties.

### 15. Motion to bring additional motions in limine

Defendants ask for the right to file more motions in limine at a later time. That motion will be denied. Trial was delayed because of the COVID-19 pandemic, but that scheduling change was made after the pretrial deadlines had already passed. If defendants want to file more motions, they must seek leave of this court to do so.

IT IS ORDERED that:

1. The court resolves plaintiffs' motions in limine, Dkt. 99, as follows:

    a. The court reserves a ruling on the motion to prevent defendants from presenting evidence of a comparative fault defense.

    b. The motion to exclude reference to a hearsay comment from an unidentified mechanic is GRANTED as unopposed.

    c. The motion to exclude evidence of plaintiff's insurance is GRANTED.

    d. The motion to present evidence of defendants' insurance is GRANTED for the purpose of showing that MGGT relied on the insurance company's determination of Aguilera's fitness to drive.

    e. The motion to allow plaintiffs to introduce evidence of defendant's insurance policy limit is GRANTED in part. Defendants are ordered not to present evidence of their financial strength. If they do, plaintiffs may introduce evidence of indemnification,

    f. The court reserves a ruling on the motion to take judicial notice of statutes.

    g. The court reserves a ruling on the motion to establish as fact that MGGT did not have the documents required to make defendant Aguilera a "qualified driver" under federal law.

2. The court resolves defendants' motions in limine, Dkt. 87, as follows:

    a. The motion to bar plaintiffs from offering testimony on their negligent hiring or supervision claim is DENIED.

    b. The court reserves a ruling on the motion to bar plaintiffs from introducing evidence related to their punitive damages claim.

    c. The motion to exclude evidence of Megan's psychological injury is DENIED.

    d. The court reserves a ruling on the motion to exclude evidence of Megan's loss of future earnings.

    e. The court reserves a ruling on the motion to exclude evidence of Jared's lost wages.

    f. The motion to exclude evidence of Megan's knee pain is DENIED.

    g. The motion to exclude evidence of future medical treatment is DENIED.

    h. The motion to exclude evidence of Aguilera's traffic citation and nolo contendere plea is GRANTED.

    i. The motion to exclude evidence of traffic infractions defendants may have received is GRANTED as to infractions subsequent to the accident and DENIED as to infractions prior to the accident.

    j. The motion to exclude evidence of Aguilera's firing is GRANTED.

    k. The motion to exclude the accident report is GRANTED.

l.  The motion to bar plaintiffs from referring to the Spanish translator at trial is GRANTED.

m.  The motion to bar plaintiffs from using certain litigation techniques is GRANTED as to Golden Rule arguments and otherwise DENIED.

n.  The motion to bar plaintiffs from calling any undisclosed witnesses is GRANTED and applied to both parties.

o.  The motion to bring additional motions in limine is DENIED.

Entered September 30, 2021.

                         BY THE COURT:

                         /s/

                         _____
                         JAMES D. PETERSON
                         District Judge